HENRY C. MARTINE, Respondent, *v.* MARTHA M. HUYLER, Appellant.

*Supreme Court, Second Department, General Term, February* 10, 1890.

1. *Appeal. Judgment.*—An appeal from a judgment, based upon a verdict, furnishes questions of law only for examination.
2. *Same. Order denying motion for new trial.*—An appeal from an order, denying a motion for a new trial on the judge's minutes, brings up the whole case and gives the general term jurisdiction to review the facts and determine whether the verdict has sufficient support from the evidence.
3. *Same.*—Where the evidence and inferences satisfy the court that the verdict is the result of either passion, prejudice, partiality or mistake, the court will pronounce it erroneous and unjust.
4. *Evidence. Presumption.*—A loan by one party and the execution of a note therefor by another raise the presumption that the latter has no claim against the former party.
5. *Same.*—The payment of a balance of an account without the interposition of any claim, though asked if he had one, is inconsistent with any then existing demand on the part of the payer against the payee.
6. *Same.*—The presentation of monthly statements, wherein a party enters his claim at a certain amount each month, estops him from any further or different claim.

Appeal from judgment of $2,547.59 in favor of plaintiff entered on verdict of a jury.

Action to recover a balance claimed to be due on a contract for labor and services performed by plaintiff as agent, in taking charge of defendant's property.

*Samuel Cohn,* for appellant.

*Horace E. Deming* and *Charles M. Demond,* for respondent.

DYKMAN, J.—An appeal from a judgment based upon a verdict of a jury furnishes questions of law only for examination. In this case, however, the record discloses no exceptions on the part of the appellant, and, therefore, the appeal from the judgment presents nothing for review, there being some evidence to support the verdict.

But the appeal from the order denying the motion for a new trial on the minutes of the court brings before us the whole case and gives us jurisdiction and power to review the facts and ascertain and determine whether the verdict rendered has sufficient support from the evidence.

Under our system of jurisprudence it is the exclusive province of the jury to pass upon the questions of fact involved, subject to the supervisory power of the court on appeal, and it has been often said that the appellate tribunals interfere with verdicts with reluctance, but the observation does not imply unwillingness on the part of the courts to enter upon an examination of the testimony and determine its sufficiency to justify the conclusion reached by the jury. On the contrary, it is the imperative duty of the court to scrutinize the testimony and find whether it leads legitimately to the verdict rendered, or whether it be the product of mistake, partiality, corruption, passion or prejudice, or is against the striking preponderance of the proof, and if it can be fairly determined from the evidence that the verdict is the result of either of the causes enumerated, it will be set aside. Veneration for the system of trial by jury can-

not properly engender aversion to disturbance of verdicts, for experience teaches us that infallibility is not an invariable concomitant of the jury verdicts. These remarks are not made for the disparagement of the jury system, or the results of jury trials, but simply to justify the exercise of the right and the discharge of the duty of the court to make a full and fearless examination of the evidence in cases like the present, for the detection and correction of error, and to follow and declare the dictates of right reason, law and discretion, without aversion, even though the result effects the overthrow of the verdict of a jury.

Carrying with us the light obtained from these principles, let us now turn to the examination of the questions of fact involved in the appeal.

The case is this: In the forepart of the year 1878 the plaintiff was employed to take charge of the property of the defendant, attend to the reparation of the same, collect the rents, and pay them over after a deduction of the expenses, and he entered upon the employment March 1, 1878, and continued in the service until the last of March, 1885, a period of seven years and one month. So far there is no dispute about the facts, but the controversy arises about the rate of the plaintiff's compensation.

He says he was to receive two dollars a day for the first year, and two dollars and fifty cents a day for all the succeeding years, and this action is for the recovery of the balance due him at those rates after deducting the amounts he has received from time to time during the rendition of his services.

Upon the trial the plaintiff testified that under the agreement for his services he was to be paid two dollars a day for the first year, and two dollars and fifty cents a day for the succeeding years, and his wife testified to her presence at the time when the agreement was made, and corroborated his testimony respecting the rate of his compensation.

Such was the evidence on the part of the plaintiff, and

then the following proof was introduced on behalf of the defendant.

The testimony of Doctor Huyler, the husband of the defendant, taken on a former trial of the action, was read, and he testified that he made the contract with the plaintiff, and that the agreement was for forty-eight dollars a month, with apartments to live in at Newark, New Jersey, and that the plaintiff agreed to take that salary, and that nothing was said about two dollars and a half a day.

The defendant testified in her own behalf that she was present at the interview when the plaintiff was employed; that nothing was said about two dollars or two dollars and a half a day, and that nothing was said about hiring the plaintiff for a year or for more than a year. That her husband told him he would give him forty-eight dollars a month, and they arranged for forty-eight dollars a month and apartments to live in.

Those four witnesses furnished all the oral testimony given on the trial on the subject of the plaintiff's compensation, but the following facts appeared and were laid before the jury.

During all the time of the plaintiff's service he rendered monthly statements of the amounts collected and the expenses incurred, and credited himself in such statements with his salary, sometimes employing the words salary to Martine, or Martine's salary, or H. C. M. salary; and from March, 1878, to May, 1881, inclusive, he so retained forty-eight dollars a month; from June, 1881, to August, 1881, inclusive, he retained fifty-four dollars a month, and from September, 1881, to March, 1885, inclusive, he retained fifty-two dollars a month.

In the latter part of the summer of 1883 the plaintiff was overtaken with misfortune and required money to meet increased expenses, and he applied to a clerk of Doctor Huyler for a loan of forty dollars. The request was communicated to the doctor, who directed his clerk to make the loan, and

it was made accordingly, and the plaintiff gave his promissory note for forty dollars, and agreed to liquidate the same by installments of five dollars a month.

After the note ran for several months, the plaintiff went to the office to make his return of rents, when the doctor made some inquiry about the forty dollars, and the plaintiff said he could not pay it, and thereupon the doctor tore up the note and forgave the debt.

When the plaintiff left the service of the defendant on the 1st day of April, 1885, he paid over to the clerk of her husband $153.71, and made no mention of any claim for arrearages, although the clerk testified that he informed him that they did a cash business and asked him if he was all paid up, and he said he was. The plaintiff made no denial of that testimony of the clerk, although he returned to the witness stand after it was delivered.

We thus find the case of the plaintiff supported by the testimony of himself and his wife, and some deduction is to be made from the credibility of the latter as a result of the testimony of Doctor Huyler that she was not present when the agreement was made with her husband, and his failure to say she was.

In opposition and answer to the case so made, we have the oral testimony of the defendant and her husband that the salary of the plaintiff was forty-eight dollars a month; corroborated by the conduct of the plaintiff in the deduction and retention of that exact sum as salary each month for thirty-nine months.

The counsel for the plaintiff endeavored to palliate the force of the legitimate inference from the action of the plaintiff in the retention of the sum of forty-eight dollars a month for salary, by the fact that for three months he retained fifty-four dollars a month, and for forty-three months he retained fifty-two dollars a month for such salary.

The retention of a sum beyond forty-eight dollars a month would be very forceable evidence against the defendant if it

had been brought to her knowledge, but it never was, and neither the defendant nor her husband ever had knowledge of the increased deduction, and cannot, therefore, be charged with acquiescence therein.

The settlements of the plaintiff were all made with clerks, who assumed the correctness of the charge for salary all through.

The loaning of the sum of forty dollars to meet a pressing demand, and the execution of a promissory note therefor, raises a presumption against the plaintiff and his claim which he made no effort to overcome.

He was pressed by counsel and the court to explain why he borrowed money and gave a note for it, when, according to his present position and claim, he had a legal claim and right to draw hundreds of dollars from the very party of whom he solicited and accepted a loan of the comparatively small sum of forty dollars. He gave no such explanation, and stated substantially that he had none to offer.

Under the peculiar circumstances of this case, the loan and the execution of the promissory note therefor raised a presumption amounting to decisive evidence that he then had no claim against the defendant.

Then the payment of the balance remaining in his hands for collections of rent when he left, without the interposition of any claim, although asked if he was all paid up, is a circumstance so absolutely inconsistent with his present theory as to afford conclusive evidence of its falsity and even absurdity.

Again, the plaintiff returned monthly statements of his collections and disbursements, charging, among the latter, his monthly salary, as we have already seen.

These statements emanated from the plaintiff, and in legal effect constituted representations on his part of the accuracy, validity and honesty of every item in the accounts. In the absence of mistakes he was concluded by them, and when they were accepted, as they all were by the clerks of the

defendant's husband, they were conclusive upon both parties. They were monthly settlements. There were no mistakes and no reservations, and when the plaintiff set down his salary once a month for ninety-five months and had it allowed at his figures, that very act amounted to a representation that the amount so retained was his monthly salary, and he is now estopped from making any different claim, otherwise he would profit by his own misrepresentation, for the rendition of his statements was, as we have seen, a declaration that he had each month retained the full amount of his salary, and was so antagonistic to his present attitude as to be sufficient for its condemnation.

The conduct of parties speaks with more certainty than their words; all men are presumed to contemplate the necessary consequences and results of their own voluntary action, and the contemporaneous acts of the parties in the execution and performance of their contracts constitute proofs of their understanding and construction of the same of the most satisfactory character.

The acts and conduct of the plaintiff have all been entirely inconsistent and irreconcilable with his present theory and claim, while they have all been entirely consistent with the position and theory of the defendant.

And so we find the evidence and the inferences so preponderating against the claim of the plaintiff as to satisfy us that the verdict was the result of either passion, prejudice, partiality or mistake, and we have no hesitation in pronouncing it erroneous and unjust.

Placing the testimony of the plaintiff and his wife on an equality with that of the defendant and her husband, which is more than the plaintiff can fairly claim, the other undisputed facts and the legitimate inferences which they justify lead to a conclusion entirely inconsistent with the plaintiff's claim.

The judgment should, therefore, be reversed and a new trial granted, with costs to abide the event.

BARNARD, P. J., and PRATT, J., concur.